# Department of Justice Authority to Represent the Secretary of Housing and Urban Development in Certain Potential Suits

The Department of Justice has statutory authority to represent the Secretary of Housing and Urban Development in suits that may arise from his decision to exercise his authority under the United States Housing Act of 1937 to override certain state civil service protections that would otherwise apply to employees of the Housing Authority of New Orleans.

October 10, 2007

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

You have asked whether the Department of Justice (the "Department") has statutory authority to represent the Secretary of Housing and Urban Development (the "Secretary") in suits that may arise from his decision to exercise his authority under the United States Housing Act of 1937, 42 U.S.C. §§ 1437–1437bbb-9 (2000) ("Housing Act"), to override certain state civil service protections that would otherwise apply to employees of the Housing Authority of New Orleans ("HANO"), which is a public housing agency ("PHA") established under Louisiana law, *see* La. Rev. Stat. Ann. §§ 40:381 *et seq. See* Letter for Steven G. Bradbury, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from Robert M. Couch, General Counsel, Department of Housing and Urban Development, *Re: Representation of the Secretary in Forthcoming Litigation Regarding the Housing Authority of New Orleans* (June 28, 2007) ("Couch Letter").[1] For the reasons set forth below and based on the facts that you have provided, we answer that question in the affirmative.

## I.

Section 6 of the Housing Act authorizes the Secretary to "take possession of all or part of [a] public housing agency" where the PHA is in "substantial default" on the covenants and conditions contained in its federal grant contracts. 42 U.S.C. § 1437d(j)(3)(A)(iv) (2000). You have informed us that in February 1996, the Secretary notified HANO and the City of New Orleans that HANO was in substantial default on its federal funding obligations. Later that month, acting under section 1437d(j)(3)(A)(iv), the Secretary took possession of HANO. The Housing Act provides that in doing so, the Secretary "shall be deemed to be acting not in [his] official capacity . . . , but rather in the capacity of the public housing

---

[1] The Department of Housing and Urban Development sought our views at the suggestion of the Civil Division. The Civil Division did not submit a views letter, but we did discuss the matter with the Deputy Assistant Attorney General who oversees Federal Programs.

agency." *Id.* § 1437d(j)(3)(H). That same section of the Housing Act further provides that "any liability incurred, regardless of whether the incident giving rise to that liability occurred while the Secretary . . . was in possession of all or part of the public housing agency (including all or part of any project or program of the agency), shall be the liability of the public housing agency." *Id.* Thus, when the Secretary took possession of HANO in 1996, he was "deemed" to have done so in the capacity of HANO (not in his official capacity as the Secretary), and HANO would be potentially liable with respect to any claims arising out of the Secretary's possession of HANO.

You have informed us that the Secretary now has determined that, "to effectuate HANO's recovery from its substantial default" and "to preserve [it] from insolvency," he must operate HANO without regard to state civil service laws, and he therefore plans to exercise his authority under the Housing Act, *see* 42 U.S.C. § 1437d(j)(3)(D)(i)(V) (authorizing the Secretary to disregard "any State or local law relating to civil service requirements . . . that, in the Secretary's written determination . . . , substantially impedes correction of the [PHA's] substantial default"), to exempt certain HANO employees from state civil service protections. Couch Letter at 1.

## II.

Congress has given the Department broad authority to represent a party in any court when doing so is in the interests of the United States. Section 517 of title 28 provides that the Attorney General may send an attorney from the Department of Justice "to attend to the interests of the United States in a suit pending" in state or federal court "or to attend to any other interest of the United States." 28 U.S.C. § 517 (2000). Section 518(b) further authorizes the Attorney General personally or through an officer of the Department to "conduct and argue any case in a court of the United States in which the United States is interested," whenever the Attorney General "considers it in the interests of the United States." *Id.* § 518(b). The Supreme Court noted sixty years ago that section 518 and other "long-existing statutes . . . grant the Attorney General broad powers to institute and maintain court proceedings in order to safeguard national interests." *United States v. California*, 332 U.S. 19, 27 (1947).

Whether the Department may represent a particular party in litigation depends primarily on the interests to be vindicated and not on the identity of the party to be represented, though obviously the identity of the party may say much about the nature of the underlying interests. More specifically, as explained below, we have concluded that a federal pecuniary interest suffices to trigger the Department's representational authority, even when the party represented is private. We also have concluded that the Department may represent various parties (such as foreign governments) to protect non-pecuniary federal interests. Finally, we have explained that the Department may represent federal officers and employees sued in

their individual capacities for actions taken in the course of their duties based on two government interests: the interest of the government in vindicating particular actions at issue and the distinct interest of the government in protecting its officers and employees.

First, we have concluded that the existence of a federal pecuniary interest satisfies the requirements of 28 U.S.C. §§ 517 and 518. *See* Memorandum for the Attorney General, from Larry A. Hammond, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Litigation by the United States on Behalf of the People's Republic of China Concerning Properties Transferred by the Republic of China to Private Parties* at 3 (Jan. 18, 1979) ("1979 Memorandum"). In the 1979 Memorandum, we stated that "[i]t seems clear that the United States would be deemed interested within the terms of [28 U.S.C. §§ 516–518] when it has a pecuniary interest in the outcome of the litigation." *Id.* We further explained that the statutory requirements still would be satisfied "if the party represented is a private party [] or when the defendant is a federal officer acting within the scope of his authority." *Id.* (footnotes omitted). That is, when the government has a financial interest in the outcome of litigation, the Department may represent even a private party to vindicate that interest.

Second, we have explained that the term "interest" in the Department's representational statutes encompasses non-pecuniary interests as well as pecuniary interests. *Id.* at 5. In the 1979 Memorandum, we explained that the Attorney General has "broad discretionary authority . . . to represent a party in a suit in which the United States has a pecuniary interest *or which implicates the public interest, generously defined*." *Id*. at 6 (emphasis added). There, we found sufficient the interest of the United States in "perfecting the [President's] recent [diplomatic] recognition" of China. *Id*. Moreover, we concluded that the Department's statutory authority to attend to the interests of the United States extended to the representation of such entities as foreign governments. *See, e.g.*, *id.* (concluding that the Department may conduct litigation on behalf of the People's Republic of China to recover embassy properties located in the District of Columbia and transferred to private parties, even where the United States has no pecuniary interest at stake). The courts have agreed that section 517 authorizes the Attorney General to represent private persons where the non-pecuniary interests of the United States (broadly defined) are at stake. *See, e.g.*, *Hall v. Clinton*, 285 F.3d 74, 80 (D.C. Cir. 2002) ("[E]ven if [Mrs.] Clinton were a purely private citizen at all times relevant to Hall's suit[,] . . . it was well within the DOJ's discretion to determine that the United States has (and continues to have) an interest in representing the former First Lady in litigation based upon actions she allegedly undertook while at the White House."); *Brawer v. Horowitz*, 535 F.2d 830, 834 (3d Cir. 1976) (explaining that it "approaches the frivolous" to argue that "the Department of Justice possesses no statutory or regulatory authority [under section 517] to represent a nongovernment defendant in a civil case," even where the interest of the United States—namely, defending a witness that cooperated with federal prosecutors—is

non-pecuniary). Thus, as with pecuniary interests, when the United States has a non-pecuniary interest in a case, it may represent federal and non-federal parties to vindicate that interest.

Finally, we have specifically addressed the authority of the Department to represent federal officers and employees in a variety of proceedings. We have explained that section 517 authorizes the Department to represent officers and employees "sued or subpoenaed in civil or congressional proceedings, or charged in state criminal proceedings, in their individual capacities, for acts taken in the course of their official duties." Memorandum for Dick Thornburgh, Attorney General, and Stuart E. Schiffer, Acting Assistant Attorney General, Civil Division, from William P. Barr, Assistant Attorney General, Office of Legal Counsel, *Re: Reimbursement of Attorney Fees for Private Counsel Representing Former Government Officials in Federal Criminal Proceedings* at 9 (Oct. 18, 1989) ("1989 Memorandum"). We have articulated two distinct federal interests in such situations that may satisfy the requirements of section 517. We explained that "the United States ordinarily has interests substantially identical to those of the employee in establishing the lawfulness of authorized conduct on behalf of the United States." *Id.*; *see also Department of Justice Representation in Federal Criminal Proceedings*, 6 Op. O.L.C. 153, 153–54 (1982) (discussing general interests of United States in representing employees); Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Civil Division's Recommendations Concerning Reimbursement of Legal Expenses* at 2–3 (June 24, 1981) (same).[2]

Even apart from the government's interest in establishing the lawfulness of particular conduct, we have noted that the government has an interest "in relieving the employee of the threat and burden of litigation that might otherwise chill the performance of official duties." 1989 Memorandum at 9. The Attorney General articulated this rationale 150 years ago: "No man of common prudence would enter the public service if he knew that the performance of his duty would render him liable to be plagued to death with lawsuits, which he must carry on at his own expense." *Case of Captain Wilkes*, 9 Op. Att'y Gen. 51, 52 (1857); *see also Fees of District Attorneys*, 9 Op. Att'y Gen. 146, 148 (1858) ("When a[n] . . . executive officer is sued for an act done in the lawful discharge of his duty, the government which employed him is bound, in conscience and honor, to stand between him and the consequences.").

---

[2] We have even suggested that the mere "interest in the development of judicial precedent involving litigation against federal employees" may be sufficient for purposes of section 517, "even where, in the particular case, the government lacks an interest in vindicating the employee's conduct or avoiding deterrence of similar conduct." 1989 Memorandum at 10 n.12; *see also* 28 C.F.R. § 50.15(a)(4) (2006) (providing that the United States may have an "interest" in representing federal employees in certain criminal actions, notwithstanding the Department of Justice's countervailing interests).

Given the facts that you have provided, we believe the United States has clear and substantial interests in the Secretary's exercise of his statutory authority under section 1437d(j)(3)(D)(i)(V) to exempt certain HANO employees from state civil service protections. The United States has a pecuniary interest in how HANO spends its funds, the vast majority of which come from congressional appropriations. *See* E-mail for Andrew Oldham, Attorney-Adviser, Office of Legal Counsel, from William C. Lane, Office of the General Counsel, Department of Housing and Urban Development (Sept. 5, 2007). In addition, the United States has a non-pecuniary interest in the ability of its officers to execute federal law, including the Housing Act, on behalf of the United States. Finally, the United States has an interest in defending an officer from suits arising from the faithful discharge of his statutory responsibilities and authorities because, in defending the suit, the government would attempt to establish the lawfulness of government conduct and because it would be protecting an officer from the potential burden of litigation arising out of his service. These interests suffice to allow the Department to represent the Secretary in the potential suits at issue.

Section 1437d(j)(3)(H) does not change the analysis. Section 1437d(j)(3)(H)—which "*deem[s]* [the Secretary] to be acting . . . in the capacity of the public housing agency"—may simply create a legal fiction for the limited purpose of clarifying that "any liability incurred . . . shall be the liability of the public housing agency," and not that of the United States. 42 U.S.C. § 1437d(j)(3)(H) (emphasis added); *see also Black's Law Dictionary* 446 (8th ed. 2004) (noting the word *deem* "has been traditionally considered to be a useful word when it is necessary to establish a legal fiction either positively by 'deeming' something to be what it is not or negatively by 'deeming' something not to be what it is") (quoting G.C. Thornton, *Legislative Drafting* 99 (4th ed. 1996)).[3] We need not resolve this issue, however. For the reasons discussed above, the United States has pecuniary and non-pecuniary interests in the Secretary's ability to execute his statutory authority under the federal Housing Act. The representational statutes discussed above provide ample authority for the Department of Justice to defend the Secretary based on the interests of the United States in so doing. The key is the interests of the United States, not the status of the Secretary or the source of funds that may be used to pay a potentially successful plaintiff.

---

[3] Such an interpretation would be particularly reasonable, given the litigation risk that would be created by the various potentially contentious actions authorized by section 1437d(j)(3) to resuscitate distressed PHAs. For example, under certain circumstances, the Secretary may appoint (on a competitive or noncompetitive basis) a receiver, who, under certain circumstances, may abrogate certain contracts, may demolish and dispose of all or part of the assets of the public housing agency, may establish new PHAs and consolidate existing ones, and may disregard state civil service laws. 42 U.S.C. § 1437d(j)(3)(A)-(C). Moreover, without appointing a receiver, the Secretary may take possession of the PHA and take the same actions directly. *Id.* § 1437d(j)(3)(D). Given that each of these provisions implicates various interests—including those of employees, private contractors, residents, and organized labor—any action taken by either the Secretary or a receiver can be expected to result in lawsuits.

In summary, based on our understanding of the facts, we conclude that the Department of Justice has statutory authority to represent the Secretary of Housing and Urban Development in potential suits arising from his decision to exercise his federal statutory authority to override certain state civil service protections that would otherwise apply to employees of HANO. Because the United States would have pecuniary and non-pecuniary interests in these potential suits, it does not matter that the Secretary may be "deemed to be acting not in [his] official capacity . . . , but rather in the capacity of the public housing agency," 42 U.S.C. § 1437d(j)(3)(H).[4]

JOHN A EISENBERG
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[4] We note that the Department of Justice's regulations do not expressly provide for representation of federal employees in suits arising from their official actions on behalf of a non-federal entity. *Cf.* 28 C.F.R. § 50.15 (providing for DOJ representation in certain individual-capacity tort suits against federal employees that implicate the "interests" of the United States). We have previously concluded, however, that even without separate regulatory authorization, section 517 enables the Department to represent non-federal officials and entities where it is in the "interests" of the United States to do so. *See, e.g.*, 1979 Memorandum at 3. For present purposes, it is therefore sufficient to note that—unlike the situation presented in the 1989 Memorandum, *see id.* at 6–8—the regulations do not preclude the Department of Justice from representing the Secretary under the facts as we understand them.